**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RICHARD KREITZER, | CASE NO. 1:15-cv-01667-GBC |
| Plaintiff, | (MAGISTRATE JUDGE COHN) |
| v. | MEMORANDUM |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | Docs. 1, 9, 10, 11, 14, 15 |
| Defendant. | |

## MEMORANDUM

### I.     Procedural Background

On March 1, 2013, Richard Kreitzer ("Plaintiff") filed as a claimant for disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-34, 1181-1183f, with a disability onset date of February 1, 2013. (Administrative Transcript (hereinafter, "Tr."), 11). Plaintiff has filed prior claims for benefits in January 1992, August 2008, and September 2012, which were denied and final. (Tr. 11, 69). After the claim was denied at the initial level of administrative review, the Administrative Law Judge (ALJ) held a hearing on April 30, 2014. (Tr. 50-67). On May 19, 2014, the ALJ found that Plaintiff was not disabled within the meaning of the Act. (Tr. 8-24). Plaintiff sought review of the

unfavorable decision, which the Appeals Council denied on July 20, 2015, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-5).

On August 27, 2015, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) and pursuant to 42 U.S.C. § 1383(c)(3), to appeal a decision of the Commissioner of the Social Security Administration ("SSA") denying social security benefits. (Doc. 1). On October 30, 2015, the Commissioner ("Defendant") filed an answer and an administrative transcript of proceedings. (Doc. 9, 10). On December 10, 2015, Plaintiff filed a brief in support of the appeal. (Doc. 11 ("Pl. Brief")). On January 11, 2016, the Court referred this case to the undersigned Magistrate Judge. On February 9, 2016, Defendant filed a brief in response. (Doc. 14 ("Def. Brief")). On February 22, 2016, Plaintiff filed a reply brief. (Tr. 15).

## II.     Relevant Facts in the Record
### A. Education, Age, and History

Plaintiff was born in November 1983 and was classified by the Regulations as a younger individual through the date of the ALJ decision. (Tr. 26); 20 C.F.R. § 404.1563(c). Plaintiff has no past relevant work and has worked the equivalent of

a single quarter of coverage[1] since 2002.  (Tr. 62, 100).  At the times of the decision Plaintiff resided with his girlfriend, who receives social security disability benefits, and his seven children, six of whom were also receiving social security disability benefits for a total of approximately $5000 a month for the household. (Tr. 19, 55).  He had a history of special education and earned his high school diploma online.  (Tr. 58).  Plaintiff is able to drive and in 2008 previously worked loading trailers but left due to back pain.  (Tr. 55-56).

## B. Hearing Testimony

On April 30, 2014, Plaintiff testified before the ALJ.  (Tr. 50-67).  Plaintiff testified that his girlfriend and six children receive SSI benefits totaling a little over $5,000.00 although he stated that he was "not sure" of the exact amount.  (Tr. 54-55).  Plaintiff stated that he drives.  (Tr. 55).  Plaintiff stated that he was last employed in 2008 loading and unloading trailers and that he stopped working due to back pain and that he was not allowed breaks.  (Tr. 56).  Plaintiff testified that his girlfriend handles all the bills.  (Tr. 57).  Plaintiff testified that he tries to do chores such as dishes, collect dirty clothes from the stairs, and help bathe the younger kids; however, he could only stand for a certain amount of time and then he has to take breaks and sit down.  (Tr. 57).  Plaintiff testified that his girlfriend

---

[1] A quarter of coverage represents a minimum amount of taxable income based on a statutory formula that reflects the national average wage.  *See Weidman v. Colvin*, No. CV 3:14-552, 2015 WL 5829788, at *11 n.4 (M.D. Pa. Sept. 30, 2015).

does the shopping most of the time.  (Tr. 57).  Plaintiff stated that sometimes he gets "stumped" trying to help his children with their homework and when his fifth grade son brings homework, he does not understand it but he "could try to . . . go online and figure it out." (Tr. 58-59).  Plaintiff stated that he could handle money, however, he does not handle the money because his girlfriend handles the money. (Tr. 59).  Plaintiff added that he could count, do addition and subtraction, and certain times tables.  (Tr. 59). Since his surgeries, Plaintiff stated that his hands have improved a little and that the tingling has not gone away completely.  (Tr. 59).  Plaintiff explained that if he holds something in his hands for too long, he would drop "certain items at certain weights" and he cannot confidently hold his three-year-old son since he almost fell out of his hands.  (Tr. 59-60).  Plaintiff testified that the constant use of his hands makes the symptoms worse.  (Tr. 60). With regards to his spinal impairments, Plaintiff testified that standing too long to do the dishes, sometimes going up steps, and sitting the wrong way triggers back pain.  (Tr. 60-61).  Plaintiff testified that he has to lie down two to three times a day for a half-hour to an hour in order to alleviate his pain.  (Tr. 61).

### C. Relevant Treatment History and Medical Opinions

### 1.   Geisinger Medical Center: David Chan, M.D.; Dennis Fisher, M.D.

On February 19, 2014, Dr. Fisher noted that Plaintiff's recent EKG was unchanged and he was still complaining of pain in his lower back.  (Tr. 387).  At

the time Plaintiff weighed 220 pounds and his BMI was 36.61. (Tr. 389). Plaintiff was assessed with lumbosacral spondylosis and his insurance would not cover physical therapy. (Tr. 389). On March 11, 2014, Plaintiff reported doing well following his right carpal tunnel release surgery with no numbness or tingling. (Tr. 384). Dr. Chan observed that Plaintiff had: 1) full digital flexion to the distal palmar crease of all his digits; 2) intact light-touch sensation along the palmar cutaneous, radial, ulnar, and median nerve distributions; and, 3) intact median and ulnar motor intrinsic. (Tr. 384).

### 2.    Intermountain Medical Group Consultative Evaluation: Seema Kumari, M.D.

On May 24, 2013, Dr. Kumari examined Plaintiff and rendered an opinion. (Tr. 363-67). Plaintiff reported having post-operative chronic back. (Tr. 363). He stated, however, that he was able to do his activities of daily living. (Tr. 363). In addition to his past lumbar fusion, Plaintiff reported having foot surgery in 2008 to correct a bilateral congenital foot deformity (cavus feet). (Tr. 364). On examination, Dr. Kumari observed that Plaintiff was able to: 1) get on and off the examination table without any assistive device; 2) walk without any assist device; walk on the heels and the toes; and, 3) squat and arise from the squatting position and also from the chair, however, reported lower spine pain when arising from the squatting position. (Tr. 365).

Dr. Kumari opined that there was "no limitation for sitting, standing, walking, lifting, or grasping." (Tr. 365). Dr. Kumari noted that Plaintiff reported feeling discomfort on bending, forward flexion at the lumbar spine and on extreme bending of the lumbar spine. (Tr. 365). Dr. Kumari observed that Plaintiff was able to perform fine and dexterous movement including zipping zipper, turning pages, and tying shoe laces. (Tr. 365). Dr. Kumari noted that Plaintiff's range of motion of all joints including knee, elbow, and ankle is within normal limits. (Tr. 365-66). Kumari noted the Plaintiff's range of motion was mildly restricted at the lumbar spine up to 60 degrees and causes discomfort at the extreme of the bending. (Tr. 366). Dr. Kumari observed that Plaintiff had 5/5 muscle strength in both upper and lower extremities and his sensation was intact and symmetrical. (Tr. 366). His gait was slow, but steady and he did not need an assistive device to walk. (Tr. 366). Dr. Kumari opined that Plaintiff could lift and carry 10 pounds frequently and lift up 20 pounds occasionally. (Tr. 354). She also opined that in an 8-hour work day, Plaintiff could sit two hours, stand one hour, and walk one hour, as well as use his hands frequently and stoop, kneel, crouch, and crawl occasionally. (Tr. 355-57).

### 3.   Geisinger Specialty Clinic: Brett Schlifka, D.O.; Michael Hatrak, C.R.N.P.

On August 13, 2012, Dr. Schlifka performed lumbar fusion at the L5-Sl level. (Tr. 233). On January 2, 2013, four months post-surgery, Plaintiff was

doing okay overall.  (Tr. 269).  Plaintiff's pain in his low back and bilateral legs had decreased in intensity, but he still complained of flare-ups of back pain intermittently, as well as intermittent numbness and tingling in his legs.  (Tr. 269). Plaintiff took Methadone and Percocet for relief.  (Tr. 269).  Plaintiff reported residual low back and bilateral lower leg pain and paresthesia and he was informed that his symptoms could take at least six to twelve months to subside.  (Tr. 270). Low back strengthening exercises at home were recommended in lieu of formal physical therapy.  (Tr. 270).  Plaintiff was advised to continue oral narcotic analgesics and to start using nonsteroidal anti-inflammatory drugs to lessen discomfort.  (Tr. 270).

Mr. Hatrak advised Plaintiff that he could increase activities as tolerated, but not to do any strenuous activity.  (Tr. 270).  Mr. Hatrak also opined that Plaintiff should be able to lift 30 to 40 pounds and do so, for the next four weeks, and that he could increase the weight lifted by 10 pounds every month thereafter as tolerated, with no restrictions after six months post-surgery.  (Tr. 270).

### 4.   Physical Residual Functional Capacity Assessment: Anne C. Zaydon, M.D.

Dr. Zaydon reviewed Plaintiff's medical records and rendered an opinion dated June 12, 2013.  (Tr. 69-75).  Dr. Zaydon reviewed records from: 1) Intermountain Medical Group; 2) Geisinger Clinic; 3) School Records; 4) and Plaintiff's self-report.  (Tr. 69-71).  The summary of records included: 1) a record

dated December 11, 2012, noting Plaintiff's treatment for bronchitis, and history of migraines which are usually treated with Advil, however the most recent episode persisted; 2) a record dated October 30, 2012, noting Plaintiff taking methadone one day but reported a better response with Percocet for the ongoing pain from back surgery for lumbosacral spondylosis; 3)  a record dated January 2, 2013, noting that he was last seen October 24, 2012, summarized his back diagnoses and surgical procedures, and for his four month post-operation follow up, Plaintiff reported doing okay overall, his low back pain and bilateral posterolateral leg and foot pain had decreased in intensity but that he still had intermittent flare ups of pain, numbness and tingling and exacerbation of pain with activity, and examination revealed bilateral tenderness, no muscle spasm, motor strength 5/5, with a steady independent gait; 4) a record dated December 2, 2012, noting generally normal findings, that Plaintiff was able to move all extremities equally, and demonstrated a normal gait; 5) the consultative evaluation dated May 24, 2013, wherein Dr. Kumar noted that Plaintiff's lumbar flexion and extension was 60 degrees, had 5/5 muscle strength, full grip, and that Plaintiff's gait was slow but steady and without any assistive device; and, 6) a school record from September 1991 indicating Plaintiff's Verbal IQ score was 66, Performance IQ score was 69, and full scale IQ score of 64.

Dr. Zaydon opined that Plaintiff could: 1) occasionally lift and/or carry 50 pounds; 2) frequently lift and/ or carry 25 pounds; 3) stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; and 4) sit (with normal breaks) for a total of about 6 hours in an 8-hour workday. (Tr. 73-74). Dr. Zaydon opined that Plaintiff had an unlimited ability to push and/or pull, climbing ramps/stairs, balance, stoop, and kneel. (Tr. 74). Dr. Zaydon opined that Plaintiff could frequently climb ladders, and did not have any manipulative or communicative limitations. (Tr. 74). In support for her opinion Dr. Zaydon noted Dr. Kumari's May 2013 consultative evaluation which noted Plaintiff underwent lumbar fusion in 2012, had paresthesias, and used Percocet. (Tr. 75). Dr. Zaydon noted Plaintiff's BMI of 36, that Dr. Kumari observed that Plaintiff was able to get on and off the examination table without any difficulty, had a normal gait, able to heel-toe walk, able to perform fine motor and dexterous movements, had a full range of motion in the extremities, lumbar flexion to 60, strength 5/5, neurologically intact, and a full grip. (Tr. 75).

Dr. Zaydon noted that when Plaintiff saw the neurosurgeon in January 2013, Plaintiff reported that he was doing OK, experienced low back pain, flare-ups of foot pain and examination revealed tenderness in the back, full strength of 5/5, and a steady gait. (Tr. 75). Dr. Zaydon determined that Dr. Kumari's Macy 2013 opinion was partially consistent with the medical evidence of record. (Tr. 75). Dr.

Zaydon gave great weight to Mr. Hatrak's[2] January 2013 opinion that Plaintiff could lift 30-40 pounds by four weeks then increase ten pounds every month thereafter as tolerated and that there were no restrictions six months after surgery. (Tr. 75).

### 5.     Psychiatric Review Technique: Francis Murphy, Ph.D.

On June 14, 2013, Dr. Murphy reviewed Plaintiff's treatment records and rendered an opinion regarding Plaintiff's psychiatric limitations.  (Tr. 69-70, 75-77).  Dr. Murphy reviewed records from: 1) Intermountain Medical Group; 2) Geisinger Clinic; 3) School Records; 4) and Plaintiff's self-report.  (Tr. 69-71).The summary of records included a school record from September 1991 indicating Plaintiff's Verbal IQ score was 66, Performance IQ score was 69, and full scale IQ score of 64.  (Tr. 71). Dr. Murphy opined that Plaintiff had a mild restriction of activities of daily living and moderate difficulties in maintaining social functioning and maintaining concentration, persistence or pace.  (Tr. 72).  As support for his opinion Dr. Murphy explained that he considered Plaintiff's history of a specific learning disability, include history of low IQ scores assessed in the first grade and that Plaintiff's "[a]daptive functioning suggested a higher level of intellect."  (Tr. 72).  Dr. Murphy noted that Plaintiff: 1) made no mental allegations; 2) had no

---

[2]  Although Dr. Zaydon attributed the January 2013 opinion to Dr. Schlifka, the opinion was signed by his nurse practitioner, Mr. Hatrak.

history of psychiatric treatment; 3) could drive, shop, and manage finances; and, 4) was able to answer Dr. Kumari's questions appropriately.  (Tr. 72).

Dr. Murphy opined that Plaintiff was not significantly limited in the ability to: 1) remember locations and work-like procedures; 2) understand, remember, and carry out very short and simple instructions; 3) maintain attention and concentration for extended periods; 4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; 5) work in coordination with or in proximity to others without being distracted by them; 6) make simple work-related decisions; 7) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; 8) ask simple questions or request assistance; 9) accept instructions and respond appropriately to criticism from supervisors; 10) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and, 11) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.  (Tr. 75-76).  Dr. Murphy opined that Plaintiff was moderately limited in the ability to: 1) understand, remember, and carry out detailed instructions; 2) sustain an ordinary routine without special supervision; and, 3) interact appropriately with the general public.  (Tr. 75-76).

Dr. Murphy explained that there was not a treating source opinion in the record regarding his mental limitations and the totality of the evidence did not suggest that Plaintiff was mentally disabled.  (Tr. 77).  Dr. Murphy concluded that Plaintiff was capable of engaging in simple repetitive work activities on a sustained basis in spite of his limitations.  (Tr. 77).

### III.    Legal Standards and Analysis

To receive benefits under the Act, a claimant must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A).  The Act requires that a claimant for disability benefits show that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The ALJ uses a five-step evaluation process to determine if a person is eligible for disability benefits.  *See* 20 C.F.R. § 404.1520.  The ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the

claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §§ 404.1520. Before step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four. If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that the claimant can perform. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability under the Act lies with the claimant. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

With due deference to the Commissioner's construction of social security rulings and regulations, the court may reverse the Commissioner's final determination if the ALJ did not properly apply the legal standards. *See* 42 U.S.C. § 405(g) ("court shall review only the question of conformity with such regulations and the validity of such regulations"); *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166-67 (2012) (deference to agency interpretation of its own regulations); *Sanfilippo v. Barnhart*, 325 F.3d 391, 393 (3d Cir. 2003) (plenary

review of legal questions in social security cases); *see also Witkowski v. Colvin*, 999 F. Supp. 2d 764, 772-73 (M.D. Pa. 2014) (citing *Poulos v. Commissioner of Social Security*, 474 F.3d 88, 91 (3d Cir. 2007)).   The court may also reverse the Commissioner if substantial evidence does not support the ALJ's decision.  *See* 42 U.S.C. § 405(g); *see also Johnson v. Commissioner of Social Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir.1986).  Substantial evidence is a deferential standard of review.  *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Substantial evidence is "less than a preponderance" and "more than a mere scintilla."  *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

## A.    Listing 12.05

Plaintiff argues that the ALJ erred in concluding that Plaintiff's intellectual impairment did not meet the requirements of Listings 12.05(C).  Pl. Brief at 9.  A claimant must establish each element of a Listing to qualify as disabled under a

Listing.  20 C.F.R. § 404.1525(d) ("To meet the requirements of a listing, you must

have a medically determinable impairment(s) that satisfies *all of the criteria in the*

*listing*.") (emphasis added). As the Third Circuit has explained:

> For a claimant to show that his impairment matches a listing, it must
> meet *all* of the specified medical criteria. An impairment that
> manifests only some of those criteria, no matter how severely, does
> not qualify." *Zebley*, 110 S.Ct. at 891 (emphasis in original). "For a
> claimant to qualify for benefits by showing that his unlisted
> impairment, or combination of impairments, is 'equivalent' to a listed
> impairment, he must present medical findings equal in severity to *all*
> the criteria for the one most similar listed impairment." *Id.* (emphasis
> in original).

*Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992). Thus, if there is one

element that is not satisfied, the ALJ will have substantial evidence to conclude

that a claimant does not meet a Listing.  *See Williams v. Sullivan*, 970 F.2d 1178,

1186.

> Listing 12.05(C) requires:
>
> 12.05 Mental retardation: Mental retardation refers to significantly
> subaverage general intellectual functioning with deficits in adaptive
> functioning initially manifested during the developmental period; i.e.,
> the evidence demonstrates or supports onset of the impairment before
> age 22.
> The required level of severity for this disorder is met when the
> requirements in A, B, C, or D are satisfied. . . .
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and
> a physical or other mental impairment imposing an additional and
> significant work-related limitation of function. . .

20 C.F.R. § Pt. 404, Subpt. P, App. 1.  The ALJ correctly observed that there was

no evidence to support onset of the impairment before age 22 and did not have a

combination of significant work-related limitation of function given that Plaintiff was able to obtain a high school diploma online, drive, manage finances, shop, and function at the fifth grade level. [3]  (Tr. 13, 15, 17, 55, 58, 142).  Moreover, Plaintiff testified that he left his previous job of loading trailers in 2008 due to back pain, not due to intellectual or cognitive limitations.  (Tr. 56).

Given that not all of the elements of Listing 12.05(C) have been satisfied, substantial evidence supports the ALJ's determination that Plaintiff does not meet the Listing.  *See Williams v. Sullivan*, 970 F.2d 1178, 1186.

///

---

[3] The adjudicative decisions from the previous claims were not a part of the record.  The parties still reference primary and secondary education and cognitive testing records without addressing how Plaintiff's cognitive impairment has changed since the previous adjudications.  The Court reminds the parties that when a plaintiff previously has been adjudicated not disabled, the plaintiff must show that his or her condition worsened in comparison to that which was established in the preceding claim to a degree sufficient to demonstrate an inability to perform substantial gainful activity.  *Richardson v. Colvin*, No. 1:13-CV-02944-GBC, 2015 WL 1608665, at *5-6 (M.D. Pa. Apr. 10, 2015).  The Third Circuit observed that "several circuits have held that dismissals of 'new' claims that effectively repeat previously denied claims and which are therefore held by the Secretary to be *res judicata* are not reviewable." *Stauffer v. Califano*, 693 F.2d 306, 307 (3d Cir.1982); *see also* 20 C.F.R. §§ 404.957(c)(1), 416.1457(c)(1).  As the Third Circuit observed:

> "The plaintiff may not simply relitigate the same issues that were presented on the first application or else there would be no end to litigation before the administrative boards and the courts. To allow a claimant to file repeated applications ... for different time periods without any *material medical change* during those periods is certainly violating all principles of finality as set forth in the Social Security Act and accompanying regulations."

*Domozik v. Cohen*, 413 F.2d 5, 7, n. 8 (3d Cir.1969) (quoting *Moore v. Celebrezze*, 252 F.Supp. 593, 595 (E.D.Pa.1966)) (emphasis added); *see also Purter v. Heckler*, 771 F.2d 682, 690–91 (3d Cir.1985) (discussing the criterion of whether material facts are the same in the subsequent claim); *Hillier v. Soc. Sec. Admin.*, 486 F.3d 359, 365 (8th Cir.2007) ("Res judicata only precludes subsequent applications for SSDI and SSI if the claimant 'has not presented any new evidence that ... [his or her] condition changed or deteriorated" since the prior proceeding").

## B. Plaintiff's Credibility

Plaintiff argues that the ALJ erred in finding Plaintiff's testimony was insufficient to establish that Plaintiff could not engage in substantial gainful work activity.  Pl. Brief at 5, 11.  Plaintiff adds that the "incontrovertible credible testimony is that [Plaintiff], at best, can perform limited activities at his own pace." Pl. Brief at 11.

Where a medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms, however, the severity of which is not substantiated by objective medical evidence, the ALJ must make a credibility finding on the claimant's subjective statements. SSR 96–7p.  The credibility finding must be based on a consideration of the entire case record, considering several factors in totality. SSR 96–7p; 20 C.F.R. §§ 404.1529, 416.929; *accord Weidman v. Colvin*, No. 3:14–CV–0552–MEM–GBC, 2015 WL 6673830, at *24–33 (M.D.Pa. Aug. 7, 2015) report and recommendation adopted, No. CV 3:14–552, 2015 WL 5829788 (M.D.Pa. Sept. 30, 2015).  There is a distinction between what an adjudicator must "consider" and what the adjudicator must explain in the disability determination.  *See* SSR 06–03p (explaining that to "consider" means to provide explanation sufficient for a "subsequent reviewer to follow the adjudicator's reasoning"); *Phillips v. Barnhart*, 91 F. App'x 775, 780 n. 7 (3d Cir. 2004); *Francis v. Comm' r Soc. Sec. Admin.*,

414 F. App'x 802, 804 (6th Cir. 2011) (social security regulations enumerating factors of an ALJ to consider "require only that the ALJ's decision include 'good reasons' . . . not an exhaustive factor–by–factor analysis").

Plaintiff does not address the totality of the medical evidence and the conflict between Plaintiff's testimony and doctors' observations and opinions. For example, while Plaintiff stated in his function report that he could pay bills, count change, handle a savings account and use a checkbook or money orders (Tr. 122), without citing to the record, he asserts in his brief that he has difficulty paying bills. (Pl. Brief at 8). While Plaintiff does not present any medical opinion regarding Plaintiff's mental or cognitive limitations to contradict the June 2013 opinion of Dr. Murphy explained that he considered Plaintiff's history of a specific learning disability, include history of low IQ scores assessed in the first grade and that Plaintiff's "[a]daptive functioning suggested a higher level of intellect." (Tr. 72). Dr. Murphy noted that Plaintiff: 1) made no mental allegations; 2) could drive, shop, and manage finances; and, 3) was able to answer Dr. Kumari's questions appropriately. (Tr. 72).

With regard to physical impairments, while Plaintiff testified that the severity of pain required him to lay down two to three times a day for a half-hour to an hour in order to alleviate his back pain (Tr. 61) and that he cannot sit or stand for long periods of time (Tr. 57, 60-61, 120-23), in January 2013, Plaintiff reported

that he was doing okay with regards to his back symptoms four months after surgery with only intermittent symptoms.  (Tr. 269).  Mr. Hatrak also opined that Plaintiff should be able to lift 30 to 40 pounds and do so, for the next four weeks, and that he could increase the weight lifted by 10 pounds every month thereafter as tolerated, with no restrictions after six months post-surgery.  (Tr. 270).  Also in Dr. Zaydon's June 2013 assessment, she reviewed Plaintiff's medical records and opined that Plaintiff could: 1) occasionally lift and/or carry 50 pounds; 2) frequently lift and/or carry 25 pounds; 3) stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; and 4) sit (with normal breaks) for a total of about 6 hours in an 8-hour workday.  (Tr. 73-74).  Dr. Zaydon determined that Dr. Kumari's Macy 2013 opinion was partially consistent with the medical evidence of record.  (Tr. 75).  The ALJ noted that Plaintiff had back surgery and carpal tunnel surgery which successfully alleviated his symptoms.  (Tr. 14).  The ALJ noted that although Plaintiff reported having chronic back pain after surgery, he was still able to do his activities of daily living.  (Tr. 18).  Review of the medical evidence supports the ALJ's conclusions.

In concluding that Plaintiff's subjective report of the severity of his symptoms was less than fully credible, The ALJ reasonably relied on Dr. Murphy's June 2013 opinion, Dr. Zaydon's June 2013 opinion, evidence in the record where Plaintiff reported postoperative improvement, Plaintiff's ADLs, and Plaintiff's

report of experiencing only intermittent symptoms.  As discussed above regarding Listing 12.05, substantial evidence supports the ALJ's determination that Plaintiff's purported mental limitations was not supported by the evidence.

Based on the foregoing, substantial evidence supports the ALJ's credibility determination.

## C. Residual Functional Capacity

Plaintiff argues that the ALJ erred in concluding that Plaintiff was capable of doing medium work.  Pl. Brief at 8.  Plaintiff essentially argues that the ALJ's reliance on the expert opinion of non-examining Dr. Zaydon is eclipsed by Plaintiff's testimony.  Pl. Brief at 8.  As discussed above, substantial evidence supports the ALJ's credibility determination and as such, the ALJ was not obligated to credit Plaintiff's testimony over that of the agency medical experts. The ALJ properly considered, in totality, the objective medical evidence, in addition to evidence regarding Plaintiff's activities, testimony, and other information provided by treating and examining doctors.  The ALJ reasonably relied on medical expert opinion which evaluated the medical evidence, and concluded that it did not substantiate Plaintiff's claims regarding the severity of her limitations.  *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) (state agency physicians are "highly qualified" and "experts" in social security disability evaluation.); 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to

be under a disability unless he furnishes such medical and other evidence of the existence thereof"); 42 U.S.C.A. § 1382c(a)(3)(H)(i).

An ALJ is entitled generally to credit parts of an opinion without crediting the entire opinion. *See Thackara v. Colvin*, No. 1:14-CV-00158-GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015); *Turner v. Colvin*, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); *Connors v. Astrue*, No. 10-CV-197-PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). Although Plaintiff challenges the ALJ's allocation of less weight to the May 2013 consultative opinion of Dr. Kumari, it was reasonable for the ALJ to rely on Part of Dr. Kumari's assessment and give great weight to the opinion of Dr. Zaydon who concluded that Dr. Kumari's March 2013 opinion was partially consistent with the medical evidence of record.  (Tr. 75).

Moreover, to the extent that Dr. Kumari's opinion relied on Plaintiff's subjective report regarding the duration that Plaintiff could sit and stand (Tr. 355-57), substantial evidence supports the ALJ in allotting less weight to this opinion given the ALJ's limited credibility determination of Plaintiff's testimony.  When a physician's opinion is based on subjective, rather than objective, information, and the ALJ has properly found a claimant's subjective claims to be less than fully credible, an ALJ may assign less weight to the opinion:

> [T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion. An ALJ may discredit a physician's opinion on disability that was premised largely on the claimant's own accounts of her symptoms and limitations when the claimant's complaints are properly discounted. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) ("The ALJ thus disregarded Dr. Bliss' opinion because it was premised on Fair's own subjective complaints, which the ALJ had already properly discounted. This constitutes a specific, legitimate reason for rejecting the opinion of a treating physician.").

*Morris v. Barnhart*, 78 Fed. Appx. 820, 824-25 (3d Cir. 2003) (some internal citations omitted).

Substantial evidence supports the great weight that the ALJ gave to the opinion of Dr. Zaydon who opined that Plaintiff had the residual functional capacity to do medium work (19, 74-75), and it was reasonable for the ALJ to rely on this opinion in formulating the RFC.   Based on the foregoing, substantial evidence supports the ALJ's RFC.

## IV.   Conclusion

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence.   Accordingly, the Court will affirm the decision of the Commissioner pursuant to 42 U.S.C. § 405(g).

An appropriate Order in accordance with this Memorandum will follow.

Dated: September 30, 2016            _____ s/Gerald B. Cohn _____
                                     GERALD B. COHN
                                     UNITED STATES MAGISTRATE JUDGE